1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

## UNITED STATES DISTRICT COURT

### NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **MARIO PERUGINI, an individual,** | Case No. 15-cv-03723-YGR |
| **Plaintiff,** | **ORDER DENYING DEFENDANT UNIVAR USA, INC.'S MOTION FOR PARTIAL SUMMARY JUDGMENT** |
| v. | |
| **UNIVAR USA INC., a corporation; & Does 1 through 25, inclusive,** | **RE: DKT. NO. 42** |
| **Defendants.** | |

Plaintiff Mario Perugini ("Perugini") brings this action against defendant Univar USA, Inc. ("Univar" or "Company") alleging claims for wrongful termination and violations of California Labor Code sections 1102.5(b), 6310, and 98.6. Univar has filed a Motion for Partial Summary Judgment on Perugini's claim for punitive damages on the grounds that no managing agent acted with malice on its behalf in the instant case. (Dkt. No. 42.)

Having carefully considered the papers submitted, the arguments of the parties at the hearing, the admissible evidence, and the pleadings in this action, and for the reasons set forth below, the motion is **DENIED.**

## I.    BACKGROUND

### A.  Statement of Issues

This motion raises two issues related to punitive damages. Under California law, Univar may only face liability for punitive damages if one of its officers, directors, or managing agents acted wrongfully in terminating Perugini. Cal. Civ. Code § 3294(b). The parties agree that the three supervisors were neither officers nor directors, but dispute whether they were Univar's managing agents. Thus, the first issue centers on whether a genuine issue of material fact exists as to whether Univar employees Albert Burruss, Frank Murphy, and Aaron Adams were "managing agents" under California Civil Code section 3294. Next, Univar may only be held liable for

punitive damages if its managing agent acted with "oppression, fraud, or malice." *Id.* Thus, Univar claims that the evidence does not support such a finding as a matter of law.

**B.  Summary of Facts**

The relevant facts given the stated issues are as follows.  On April 8, 2015, Univar terminated Mario Perugini's employment as a truck driver.  (Declaration of Albert Burruss, Dkt. No 42-4, ("Burruss Decl.") ¶ 24.)  Perugini had worked for Univar since September 2012 out of the Company's facility in Pittsburg, California, one of two facilities making up Univar's "Redwood City Branch."  (Declaration of Aaron Adams, Dkt. No. 42-2 ("Adams Decl.") ¶ 4.)  Univar provides services related to chemical products and employs approximately 6,000 individuals in the United States and 9,000 individuals worldwide.  (Plaintiffs' Response to Univar's Separate Statement and admissible evidence cited therein, Dkt. No. 43-1, Defendant's Undisputed Material Fact ("DUF") 6.)  The Redwood City Branch operates under one of Univar's three business groups, the Industrial Chemicals Business Group ("ICBG").  (DUF 5.)  Univar's ICBG maintains approximately 100 branches in the U.S, some of which have additional satellite offices.  (DUF 7.)

Two main events preceded Perugini's termination:

*1.  Perugini and Others Complain to HR Regarding Unpaid Wages*

First, in December 2014, Perugini and two other employees reported a payroll issue to supervisor Brian Wills and requested unpaid wages.  (Decl. of Jason Allen ("Allen Decl."), Dkt. No. 42-5, ¶ 3 and Ex. A ("Perugini Depo.") at 73:15-23.)  All three had been working the night shift, which meant that they were supposed to receive their regular hourly base rate of pay plus an additional $1.50 per hour shift-differential rate.  (Adams Decl. ¶ 18; Declaration of Frank Murphy, Dkt. No. 42-3 ("Murphy Decl.") ¶ 10; Perugini Depo. at 71:19-72:14.)  Perugini reported the unpaid wages to his supervisors in December 2014, January 2015, and February 2015.  On February 27, 2015 when Univar had still not paid him, he complained and told Wills that he would go to the labor board if the matter was not resolved in a week.  (Plaintiff's Response to Univar's Separate Statement, Dkt. No. 43-1, Plaintiff's Additional Facts ("PAF") and evidence cited therein, Fact 45.)  Wills informed District Operations Manager Frank Murphy of the threat, and Murphy informed Regional Human Resources ("HR") Director Aaron Adams.  (PAF 46, 47.)

In early March 2015, Albert Burruss began to serve as Branch Operations Manager at the Redwood City Branch, and Murphy instructed him to handle the payroll issue. (Burruss Decl. ¶ 10.) Burruss apparently understood the "sensitivity" of the issue, as he described in an email to payroll specialist Yvonne Borg, copying Murphy and another supervisor. (Declaration of Joseph Clapp in Opposition to Motion ("Clapp Decl."), Dkt. No. 43-2, Ex. "Murphy Depo." at 81:10-13 and Ex. 10.)[1] On March 5, Burruss met with the three complaining employees to discuss the payroll issue. (*Id.* ¶ 11.) Perugini testified that Burruss told Perugini in a "nasty" way that he "would get his money." (Clapp Decl., Ex. "Perugini Depo." at 78:4-22.) On March 9, Univar paid Perugini and the others their owed compensation. (Burruss Decl. ¶ 11.)

### 2.   *Elbowing Incident Triggering Termination*

A month later, in early April 2015, employee Jason Buslett reported to Univar that Perugini harassed and struck him. On April 2, Buslett first reported to the Univar HR hotline that Perugini had made a harassing comment to him that day. (DUF 34.) Specifically, Buslett stated that, while sitting at a table with Perugini and two others, Perugini made a comment about a hypothetical gunman at the DMV. Perugini then made a gesture toward Buslett, in an apparent reference to the earlier November 2014 incident for which Buslett was disciplined as a result of Perugini's reporting.[2] (Perugini Depo. at 20:8-22:11; Allen Decl., ¶ 5 and Ex. C ("Buslett Depo.") at 89:1-90:1). By the time Buslett arrived at work the following morning, April 3, Perugini was aware that Buslett had reported his conduct. (DUF 35.) According to Buslett, Perugini then elbowed him with enough force to cause a bruise. Buslett testified that branch manager Burruss was standing four feet away from him when Perugini struck. (Clapp Decl. ¶ 5, Ex. "Buslett Depo." at 104:14-15.) Buslett reported the incident to the HR department, which notified branch manager Burruss

---

[1] Defendant's claim that Burruss did not know of Perugini's February 27, 2015 threat to inform the labor board of the unpaid wages does not eliminate the possibility that he could have acted with malice in terminating Perugini for making internal complaints about his unpaid wages.

[2] In November 2014, Perugini and three other employees reported to HR that employee Jason Buslett had threatened to bring a weapon to work if he was not given a work shift he desired. Following an investigation, Univar disciplined Buslett for making the comment. (Murphy Decl. ¶¶ 8-9; "Buslett Depo." at 72:4-73:16.)

and director Adams.  (Buslett Depo. at 91:2-91:11; Adams Decl. ¶ 23 & Ex. B; Burruss Decl. ¶¶ 12-15.)  When transportation supervisor Gary Lloyd asked Perugini about the incident that day, Perugini denied striking Buslett, stating that he and Buslett only "brushed jackets" as they were walking in the same direction.  (DUF 37; Perugini Depo. at 51:15-52:22.)  Burruss referred to this as the "chicken wing" incident.  (Burruss Depo. at 60:19-23; *see also* Plaintiff's Opposition, Dkt. No. 43, at 4.)  Lloyd informed Perugini that he was suspended.  (Perugini Depo. at 64:16-21.)

Burruss proceeded to conduct an investigation that involved speaking to Buslett and asking him to send a written report.  (Burruss Depo. at 63:20-64:1, 68:2-3 and Ex. 12.)  Buslett provided to Burruss a photograph purporting to show his bruise marks.  (Burruss Decl. ¶ 19 and Exs. B-C.)[3] Perugini testified that Burruss did not interview him, though Burruss testified otherwise.  (Perugini Depo. at 64:16-23; Burruss Depo. at 59:15-60:4.)  Burruss testified that he did not interview other potential witnesses to the "chicken wing" incident or document any interviews.  (Burruss Depo. at 68:10-22.)  Adams described at deposition that the Company's "policy" was to interview potential witnesses and document such interviews.  (Clapp Decl. Ex. "Adams Depo" at 123:5-12.)

### 3.  *Burruss Terminates Perugini*

On April 6, Burruss decided to fire Perugini.  (DUF 1; Burruss Decl. ¶ 20.)  Burruss consulted with both Murphy and Adams on this decision, but the decision was his.  (Murphy Decl. ¶¶ 14-16; Burruss Decl. ¶ 21.)  On April 7, Burruss advised Murphy and Adams that he based the termination on his belief that Perugini had struck Buslett given: (i) Buslett's allegations; (ii) the existence of Perugini's motive to retaliate against Buslett; (iii) the photographic evidence of a bruise provided by Buslett; and (iv) Perugini's admission of physical contact.  (DUF 40, 41.)  Burruss testified that the Company had a "no tolerance" policy for violence.  (Clapp Decl., Ex. "Burruss Depo." at 68:10-22.)[4]  Murphy and Adams agreed with Burruss' decision to terminate Perugini.  (DUF 2, 3.)  Burruss terminated Perugini on April 8.  (Burruss Decl. ¶ 24.)

---

[3] Perugini disputes that the photograph shows a bruise.  (DUF 38 and Perugini's response.) Given the pictures submitted, the Court finds a dispute exists as to whether the pictures show any bruise.

[4] The record does not contain any written "no tolerance" policy.

United States District Court
Northern District of California

## II.   APPLICABLE STANDARD

### A.   Legal Framework

Summary judgment is appropriate when no genuine dispute as to any material fact exists and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  Any party seeking summary judgment bears the initial burden of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).  Material facts are those that might affect the outcome of the case.  *Anderson v. Liberty Lobby. Inc.,* 477 U.S. 242, 248 (1986).  A dispute as to a material fact is "genuine" if sufficient evidence exists for a reasonable jury to return a verdict for the nonmoving party.  *Id.*

On an issue where the nonmoving party will bear the burden of proof at trial, as here, the moving party can prevail merely by pointing out to the district court that there is an absence of evidence to support the nonmoving party's case.  *Celotex*, 477 U.S. at 324-25.  If the moving party meets its initial burden, the opposing party must then set out specific facts showing a genuine issue for trial in order to defeat the motion.  *Anderson*, 477 U.S. 242, 250; *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007); *see also* Fed. R. Civ. P. 56(c), (e).

On summary judgment, the plaintiff need not prove his case, but the higher clear and convincing evidentiary standard for punitive damages must still be taken into account because the plaintiff ultimately must be able to meet that standard at trial.  *See Spinks v. Equity Residential Briarwood Apartments,* 171 Cal. App. 4th 1004, 1053 (2009).  Still, "summary judgment 'on the issue of punitive damages is proper' only 'when no reasonable jury could find the plaintiff's evidence to be clear and convincing proof of malice, fraud or oppression.'"  *Id.* (citation omitted).

When deciding a summary judgment motion, "the court does not make credibility determinations or weigh conflicting evidence."  *Soremekun,* 509 F.3d at 984.  Instead, the court must view the evidence in the light most favorable to the nonmoving party and draw all justifiable inferences in its favor.  *Anderson,* 477 U.S. at 255.

//

//

United States District Court
Northern District of California

**B.**     **California Legal Framework on Punitive Damages**

*1.     Law Regarding Managing Agents*

Under California law, for a breach of a non-contractual duty, punitive damages are available "where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice."  Cal. Civ. Code § 3294(a).  An employer is not liable for punitive damages based upon the conduct of an employee unless the employer: had advance knowledge of the employee's unfitness "and acted with conscious disregard of the rights or safety of others"; "authorized or ratified the wrongful conduct"; or was "personally guilty of oppression, fraud, or malice."  *Id.* § 3294(b).  Furthermore, if the employer is a corporation, "the advance knowledge and conscious disregard, authorization, ratification, or act of oppression, fraud, or malice must be on the part of an officer, director, or managing agent of the corporation."  *Id.*

In order to qualify as an "officer, director, or managing agent of the corporation," the California Supreme Court has held that the corporate decision-maker must have "substantial discretionary authority over decisions that ultimately determine corporate policy."  *White v. Ultramar, Inc.*, 21 Cal.4th 563, 577 (1999).  These are "policies that affect a substantial portion of the company and that are the type likely to come to the attention of corporate leadership.  It is this sort of broad authority that justifies punishing an entire company for an otherwise isolated act of oppression, fraud, or malice."  *Roby v. McKesson Corp.*, 47 Cal.4th 686, 714 (2009).  Merely having the power to hire and fire is not sufficient to establish that an employee is a "managing agent."  *White*, 21 Cal.4th at 580.  Moreover, whether "a supervisor is a managing agent within the meaning of Civil Code section 3294 does not necessarily hinge on their level in the corporate hierarchy."  *Myers v. Trendwest Resorts, Inc.,* 148 Cal. App. 4th 1403, 1437 (2007) (citation and internal quotation marks omitted).  "Rather, the critical inquiry is the degree of discretion the employees possess in making decisions that will ultimately determine corporate policy."  *Id.* (citation and internal quotation marks omitted).  Whether employees exercise sufficient authority is determined on a case-by case basis.  *White*, 21 Cal.4th at 567.

The California Court of Appeal's decision in *Davis v. Kiewit Pac. Co.*, 220 Cal. App. 4th 358 (2013), a wrongful termination case, provides a useful framework for the managing agent

1   analysis.  There, the appellate court reversed summary judgment on a request for punitive damages

2   because a question of fact existed as to whether a "project manager" who was the highest-ranking

3   employee on the construction site where the discrimination had allegedly occurred was a managing

4   agent.  *Davis*, 220 Cal. App. 4th at 360-61, 365-74.  The court found that evidence showing an

5   employee's "hierarchy and job duties, responsibilities, and authority may be sufficient, absent

6   conclusive proof to the contrary" to show that the employee is a managing agent.  *Id.* at 370.

7         In *Davis*, the plaintiff, a construction site box grader operator, submitted evidence either

8   directly showing or supporting a reasonable inference that her supervisor, project manager Preedy:

9   1) was the company's top management employee in charge of $170 million project (including over

10   100 employees) and all other company managers on the project reported to him; 2) had broad

11   discretion relating to personnel issues and the allocation of resources to meet project goals; 3) had

12   discretion to allow the use and possession of alcohol by company employees *despite* its written

13   corporate policy prohibiting it on the jobsite; 4) had authority and discretion not to initiate an

14   investigation into the plaintiff's harassment complaint *despite* the company's written policy

15   requiring an immediate investigation; and 5) had duties including interfacing with stakeholders,

16   contract administration, and making sure the project was completed according to the contract.

17   Based on this evidence, the court concluded that a trier of fact could reasonably infer that Preedy

18   "exercised substantial discretionary authority over [significant] aspects of [the company's]

19   business." *Id.* at 367-68, 370 (citation and internal punctuation omitted).

20         The *Davis* plaintiff also submitted sufficient evidence that another supervisor, Equal

21   Employment Opportunity Officer ("EEO") Lochner, was a managing agent, namely that: 1)

22   Lochner was responsible for administering the company's policies for prevention of discrimination,

23   retaliation, and harassment for its entire Northwest District, including California; 2) all onsite EEO

24   officers were trained to send all concerns about policy violations to Lochner; 3) Lochner conducted

25   training and conducted or oversaw the company's investigations relating to alleged discrimination,

26   retaliation, or harassment; and 4) he chose not to conduct an investigation into plaintiff's

27   harassment complaint.  *Id.*  The court held that a trier of fact could find that Lochner exercised his

28   authority and discretion not to enforce the company's policy against retaliation and/or to protect her

United States District Court
Northern District of California

1    from retaliation, resulting in the ad hoc formulation of corporate policy. *Id.* at 373.  Accordingly

2    summary judgment was not appropriate.

3                          2.      *Law Regarding Malice*

4           Under California law, "malice" is "conduct which is intended by the defendant to cause

5    injury to the plaintiff or despicable conduct which is carried on by the defendant with a willful and

6    conscious disregard of the rights or safety of others."  Cal. Civ. Code § 3294(c)(1).  "Oppression" is

7    "despicable conduct that subjects a person to cruel and unjust hardship in conscious disregard of

8    that person's rights."  *Id.* § 3294(c) (2).  Despicable conduct is "conduct that is…so vile, base,

9    contemptible, miserable, wretched or loathsome that it would be looked down upon and despised

10   by ordinary decent people…."  *Scott v. Phoenix Sch., Inc.*, 175 Cal. App. 4th 702, 715 (2009)

11   (internal punctuation omitted).

12          In the corporate context, terminating an individual for a wrongful reason and then offering a

13   pretextual basis for the termination may support a finding of malice or oppression.  *See Cloud v.*

14   *Casey*, 76 Cal. App. 4th 895, 912 (1999) (evidence that the defendant company passed over

15   plaintiff for a promotion because of her gender and then tried to use subsequently created criteria

16   for the job to cover up the illegal basis for its decision supported a finding of malice or oppression);

17   *see also Brandon v. Rite Aid Corp.*, 408 F. Supp. 2d 964, 982 (E.D. Cal. 2006) (denying summary

18   judgment on punitive damages claim where plaintiff's version of the facts evidenced a post-hoc

19   effort by employer to justify termination and "willful and conscious disregard" of plaintiff's rights).

20          Failing to investigate an employee's complaint may be evidence of pretext.  *See Cornwell v.*

21   *Electra Cent. Credit Union*, 439 F.3d 1018, 1033 (9th Cir. 2006) (summary judgment denied where

22   defendant corporation failed to investigate racial discrimination complaints and a jury could view

23   this failure as an attempt to conceal illegitimate motives).  Temporal proximity may also support a

24   finding of pretext.  Thus, when "adverse employment decisions are taken within a reasonable

25   period of time after complaints of discrimination have been made, retaliatory intent may be

26   inferred."  *See Passantino v. Johnson & Johnson Consumer Products Inc.,* 212 F.3d 493, 507 (9th

27   Cir. 2000); *see also Yartzoff v. Thomas,* 809 F.2d 1371, 1376 (9th Cir. 1987) (time lapse of three

28   months between protected activity and adverse action allowed an inference of causation).

### III.   ANALYSIS

Univar argues that Perugini cannot show that the three individuals involved in his termination—Burruss, Murphy, and Adams—were officers, directors, or managing agents of Univar or acted with malice or oppression.  Perugini concedes that none of the three were officers or directors.  (DUF 4 and response thereto.)  Thus, the Court examines the evidence regarding each individual's status as a managing agent under Civil Code section 3294(b) and then turns to the topic of malice.

### A.   Managing Agent Role

#### 1.   *Branch Manager Albert Burruss*

With regard to Burruss, defendant's undisputed evidence shows that Burruss worked at Univar from October 2010 through June 8, 2016, as a Branch Operations Manager within Univar's ICBG.  (DUF 9.)[5]  From May 2011 through April 2015, Burruss managed operations at the San Jose Branch.  In early March 2015, he also began managing the Redwood City Branch.  He managed both branches for three months until Univar hired another employee to handle the San Jose Branch in May 2015.  (Allen Decl. ¶ 7, Ex. E ("Burruss Depo."), at 16:23-17:16; Burruss Decl. ¶¶ 2-3.)  During that time, Perugini argues that Burruss supervised approximately 80-100 employees.  (Burruss Decl. ¶¶ 2-5.)[6]  Furthermore, Burruss testified that he was "in charge of the entire branch.  So loaders, drivers, support staff."  (Burruss Depo. at 14:1-4.)  As in *Davis*, Burruss was the top supervisor at the two branches he oversaw (three locations total) and, accepting Perugini's evidence as true, was responsible for up to 100 employees.  *Davis*, 220 Cal. App. 4th at 370; *see also White*, 21 Cal.4th at 577 ("zone manager" responsible for managing eight retail stores and 65 employees was a managing agent).[7]

---

[5] DUF 9 describes Burruss as a "Branch Operations Director ("BOM").  The Court notes the discrepancy, as the parties refer to Burruss' title elsewhere as "Branch Operations Manager."

[6] This fact is disputed as Univar contends that Burruss only supervised 60 employees. (DUF 15 and Plaintiff's response therein.)  The discrepancy is immaterial to the Court's analysis.

[7] As Univar argues, the fact that Burruss only operated one to two of Univar's 100 branches certainly evidences Burruss' limited geographic domain, but that fact is not dispositive.  Neither is the fact that Burruss was three steps below the Vice President of Operations on the operations

United States District Court
Northern District of California

1   More importantly, however, there exists evidence that Burruss exercised some authority

2   and discretion in carrying out Company policy.  After Univar transferred him to the Redwood City

3   Branch, Burruss was responsible for resolving the payroll issue that Perugini and others had

4   previously raised for months.  (Burruss Decl. ¶ 10.)  When Perugini informed Burruss around

5   March 5 that Univar owed him $1,200, which was more than Burruss had expected, Burruss had the

6   discretion and authority to have Perugini paid within four days.  (Murphy Decl. ¶ 13; Perugini

7   Depo. at 78:15-24.)

8   Furthermore, upon learning of Buslett's complaint regarding the "chicken wing" incident,

9   Burruss had the authority to conduct an investigation into the incident and the discretion to decide

10  how he would do it.  At least in this one instance, viewing the evidence in favor of Perugini,

11  Burruss failed to comply with Company "policy"[8] to investigate such incidents by interviewing all

12  individuals and witnesses involved and drafting reports of interviews.  (Adams Depo. at 59:12-

13  60:18, 61:10-62:2.)[9]  A dispute of fact also exists as to whether Burruss followed the Company's

14  written policy requiring that managers "prepare a written summary of the termination meeting and

15  have both managers initial and date it."  (Burruss Depo. at 89:6-25.)  With respect to this

16  investigation, a jury could find that Burruss deviated from corporate policy and, in turn, created ad

17  hoc policy.  *See Davis*, 220 Cal. App. 4th at 373 (supervisor Lochner's decision not to enforce anti-

18  retaliation policy evidenced managing agent status).  Though not determinative, Burruss' authority

19  to terminate Perugini is another factor supporting managing agent status.  (DUF 1.)  *See White*, 21

20  Cal.4th at 580.

21

22  hierarchy.  (DUF 12.)  *See Myers*, 148 Cal. App. 4th at 1437 ("[T]he critical inquiry is the degree of

23  discretion the employees possess in making decisions that will ultimately determine corporate
    policy.")

24  [8] It is unclear whether a written "policy" exists, as it is not in the record.

25

26  [9] The record suggests that Burruss knew there were potential witnesses to the incident.
    (Adams Depo. at 119:8-18, 123:5-12; Burruss Depo. at 68:10-22.)  Nevertheless, Burruss exercised

27  his apparent discretion in deciding not to interview Perugini, the accused, or other potential
    witnesses or to document such interviews.  (Adams Depo. at 63:6-13, 119:8-18, 123:5-12; Burruss

28  Depo. at 68:10-22; Perugini Depo. at 64:16-23.)

United States District Court
Northern District of California

1   Viewing the facts as a whole and in the light most favorable to Perugini, a material dispute

2   of fact exists as to the level of authority and discretion Burruss enjoyed.  *See White*, 21 Cal. 4th 563

3   at 577; *Davis*, 220 Cal. App. 4th at 360-61, 365-74.

4   *2.     District Operations Manager Frank Murphy*

5   The evidence regarding Frank Murphy's responsibilities is more limited.[10]  Murphy testified

6   that he oversaw "everything from safety, quality, cost, and performance" at those branches

7   (Murphy Depo. at 14:21-24.)  Murphy followed Univar's corporate policies and worked to ensure

8   that the employees working within the geographic region he supervised also followed Univar's

9   corporate policies.  (DUF 17.)  Unlike the *Davis* plaintiff, Perugini has offered no evidence that

10  Murphy had broad discretion or authority relating to, among other things, personnel issues,

11  following or ignoring corporate policy, initiating investigations into employee complaints, or

12  compliance with anti-retaliation policies.

13  Nevertheless, evidence exists that Burruss was required to obtain the Murphy's approval to

14  terminate Perugini.  (Adams Depo. at 56:19-24.)  Accordingly, by extension,[11] a dispute exists as to

15  whether Murphy, like Burruss, satisfies a "managing agent" designation.

16  *3.     Regional Human Resources Director Aaron Adams*

17  Finally, regarding Aaron Adams, defendant's undisputed evidence shows that he was

18  Univar's Regional Human Resources Director - Industrial Chemical for the Western United States

19  since September 2012.  (DUF 24.)  This included branches within Northern California, Southern

20

21  [10] The parties do not dispute the following facts.  Univar employed Murphy from

22  approximately June 2014 through March 2016 as a District Operations Manager.  (DUF 16.)  He
    supervised up to seven branches (all in California) and approximately 350 employees, all of which

23  were within the "operations" portion of the ICBG.  (DUF 23.)  He oversaw the Company's four
    Northern California locations, including their satellite offices.  These include San Jose, Redwood

24  City, Fresno, Visalia, Stockton, and the K2 facility in Pittsburg.  (Murphy Depo. at 13:16-25.)
    While with Univar, Murphy never supervised more than 7 branches (all in California) and

25  approximately 350 employees, all of which were within the "operations" portion of the Industrial

26  Chemicals Business Group.  (DUF 23.)

27  [11] The Court acknowledges that the parties did not provide, nor has the Court found,

28  authority for the contrary position, *i.e.* that a manager could be deemed a "managing agent" while
    his direct supervisors were not.

1   California, the Pacific Northwest, the Inner Mountains, St. Louis, Dallas, and Houston. (Adams

2   Decl. ¶ 5.) Adams also supervised HR Managers within the ICBG within his geographic region.

3   (DUF 26.) He testified that his role was to support employee relations (including some personnel

4   decisions), work design, compensation issues, and implementing Univar policies. (Adams Decl. ¶

5   7.) Adams administered Univar's corporate policies and worked to ensure that the ICBG personnel

6   within the geographic region he supported followed these policies. (DUF 27 and 28.)

7        As with Murphy, there exists limited evidence of what Adams' duties entailed. However,

8   the record contains evidence that Burruss was required to obtain Adams' approval to terminate

9   Perugini. (Adams Depo. at 56:19-24.) Therefore, by extension, a dispute exists as to whether

10   Adams was a managing agent.

11                    **B.**    **Malice or Oppression**

12        Having determined that genuine issues of material fact exist as to whether Burruss, Murphy

13   and Adams were managing agents, the Court turns to the question of whether the same exists with

14   respect to malice.

15        Viewing the evidence in the light most favorable to Perugini, a jury could reasonably infer

16   the following: that Burruss knew that Perugini had complained about the payroll issue (Murphy

17   Depo. at 78:17-25 and Ex. 8), later told him in a nasty way that he would get his money (Perugini

18   Depo. at 78:4-22), and then within a month, terminated him on the pretext of an alleged assault

19   (Burruss Decl. ¶ 24), given the lack of any real injury or a full investigation (Burruss Depo. at 68:2-

20   3).[12] *See Cloud*, 76 Cal. App. 4th at 912; *Cornwell*, 439 F.3d at 1033. This timing supports an

21   inference of retaliation. *See Passantino*, 212 F.3d at 507; *Yartzoff*, 809 F.2d at 1376.

22        Furthermore, Murphy and Adams' approval of Burruss' decision with actual knowledge that

23   Burruss did not conduct a full investigation in compliance with Company "policy," coupled with

24   the disputed evidence that Burruss' decision required their approval, gives rise to a genuine issue of

25

26              [12] The Court understands Univar's position to the contrary, that is, that it took no

27   disciplinary action against Perugini or the other two employees for reporting the payroll issue and
    that Perugini's theory is faulty given that the other two employees still work at Univar. (Adams

28   Decl. ¶ 21; Murphy Decl. ¶ 13; Burruss Decl. ¶ 11). However, that does not address the apparent
    defects in the investigation and the inferences that a jury can draw therefrom.

material fact as to whether they ratified the conduct.  *See College Hosp. Inc. v. Sup. Ct.*, 8 Cal.4th 704, 726 (1994).  Therefore, the Court finds that a triable issue of fact exists as to whether Univar acted with malice or oppression and leaves this issue in the jury's province for decision.

### IV.    CONCLUSION

Accordingly, Univar's Motion for Partial Summary Judgment is **DENIED.**

This terminates Docket No. 42.

**IT IS SO ORDERED**.

Date: August 15, 2016

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**

United States District Court
Northern District of California